ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

DAN M. KARMEL (NYBN 5151485)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7007
    Fax: (415) 436-7234
    Email: dan.karmel@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>PEDRO MARTINEZ MONTES,<br><br>    Defendant. | CASE NO. 3:23-CR-00314-CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING**<br><br>Date:    September 27, 2023<br>Time:   10:00 a.m.<br>Court:  Hon. Charles R. Breyer |

## I.    OVERVIEW

The United States and the defendant, Pedro Martinez Montes, jointly request that the Court accept the proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin District (the Tenderloin) through a combination of enforcement and dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts will occasionally take the form, as here, of prosecution of street-level dealing where the defendant has limited criminal history, leading the United States to seek expedited

prosecution, obtain a federal conviction, and enforce a strict three-year stay-away order that immediately excludes convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug trafficking.  For the reasons set forth below, the United States and the defendant believe that a below-Guidelines sentence—accounting for the time served in this expedited prosecution—alongside this geographical restriction meet the statutory requirements of Section 3553(a).

## II.    MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING

To advance the goal of this accelerated disposition, the parties jointly move the Court to proceed to sentencing without a presentence investigation report during the same hearing as the defendant's change of plea, or as shortly thereafter as is practicable.  This will achieve the expedited proceeding contemplated by both parties.  The Court may sentence without a presentence investigation report if it "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553" and "explains its finding on the record."  Fed. R. Crim. Proc. 32(c)(1)(A)(ii); *see also* Fed. R. Crim. P. 32(b)(1), U.S.S.G. §6A1.1, Crim. Local Rule 32-1(b).  The government respectfully submits that the record here—the Criminal Complaint, the Plea Agreement, and the parties' sentencing memoranda, all detailing the defendant's offense conduct and other factors relevant under § 3553—enable the Court to meaningfully exercise its sentencing authority under § 3553 and proceed to sentencing without the need for a presentence investigation report.  The parties request that the Court explain its findings and the sufficiency of the record at time of sentence.

## III.    APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The government calculates the following Guidelines range:

a.    Base Offense Level, U.S.S.G. §2D1.1(a)(5), (c)(8):                          24
Defendant possessed between 100 and 400 KG of Converted Drug Weight[1]

b.    Acceptance of Responsibility, U.S.S.G. §3E1.1:                            - 3

c.    Adjusted Offense Level:                                                    21

The government calculates a Criminal History Category of I (0 points).[2]

---

[1] *See* Addendum – Converted Drug Weight Table.

[2] The government has reviewed and produced in discovery the criminal history report for the

1  An Adjusted Offense Level of 21 and a Criminal History Category of I results in a Guidelines

2  range of 37 to 46 months.

3  The government also seeks a three-year term of supervised release (as required by statute) and

4  imposition of the $100 mandatory special assessment.

5  ## IV.   SENTENCING RECOMMENDATION

6  Consistent with the Plea Agreement in this case, the parties jointly request a sentence of time

7  served plus one day and a three-year term of supervised release that includes a special condition that the

8  defendant may not re-enter the Tenderloin during the period of supervised release.  This stay-away

9  condition is a critical component of the plea bargain because it prevents the defendant from returning to

10  the Tenderloin, from where the defendant's conviction for drug trafficking arises.

11  ### A.   Section 3553 Factors

12  ### 1.   *Nature and circumstances of the offense and history and characteristics of the defendant*

13

14  The defendant is a 60-year-old male who was born in Honduras.  According to the Department

15  of Homeland Security, the defendant lacks immigration status and/or is removable under U.S.

16  immigration law.  There is an immigration detainer in place such that the parties expect the defendant

17  will be transferred to the custody of the Department of Homeland Security for removal proceedings

18  following his release from the custody of the U.S. Marshals.  A criminal records check confirmed that

19  the defendant was previously arrested, on August 4, 2023, by the San Francisco Sheriff's Department for

20  the possession and sale of a controlled substance, and the possession and sale of cocaine.  To the

21  government's knowledge, the defendant's only prior criminal conviction was from 2009, for which he

22  was sentenced to 180 days' custody, placing him in Criminal History Category I.

23  Between the hours of approximately 10:20 a.m. and 11:11 a.m. on September 12, 2023, law

24  enforcement personnel observed and recorded a male, later identified as the defendant, pacing around

25  the intersection of Hyde and Eddy Street, in San Francisco, California.  The defendant was wearing a

26  grey sweatshirt with black/dark in color shoulders, a neon green collared undershirt, a black facial

27  covering, dark pants, and black and white shoes.  The defendant constantly surveyed his surroundings as

28  defendant available through a law enforcement criminal records database.

1    if he were looking for, or looking out for, someone.  The defendant was also witnessed pacing around,

2    crouching down, and counting money on multiple instances.  During the period of surveillance, law

3    enforcement observed the defendant engage in approximately six suspected hand-to-hand narcotics

4    deals.

5        Based on the foregoing, the defendant was arrested and searched.  Law enforcement recovered

6    approximately $249 in United States currency in assorted denominations and the following controlled

7    substances (weights included) from the defendant's person:

8        Suspected Cocaine - 53.0 g

9        Suspected Cocaine Base - 63.1 g

10       Suspected Heroin - 61.0 g

11       Suspected Methamphetamine - 77.6 g

12       The suspected cocaine seized from the defendant's person later tested presumptive positive for

13    Cocaine HCl utilizing a TruNarc testing device; the suspected cocaine base seized from the defendant's

14    person tested presumptive positive for cocaine base utilizing a TruNarc testing device; and the suspected

15    methamphetamine seized from the defendant's person later tested presumptive positive for

16    methamphetamine utilizing a TruNarc testing device.

17       After his arrest, the defendant agreed to remain in custody during the pendency of this case.  He

18    was arraigned on an information alleging possession with intent to distribute of cocaine, cocaine base,

19    methamphetamine.

20       In the Plea Agreement, the defendant agrees to plead guilty to Count One of the captioned

21    information: Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. § 841(a)(1),

22    (b)(1)(C).  Plea Agreement, ¶ 1.  The defendant admits that law enforcement arrested and searched him

23    after observing him conduct multiple drug sales in the Tenderloin District, and that during the search

24    law enforcement found the above-listed controlled substances.  *Id.* ¶ 2.  The defendant admits that he

25    knowingly possessed these controlled substances, and that he possessed them with the intent to

26    distribute them to other persons.  *Id.* ¶ 2.  Defendant further admits that the $249 in U.S. currency found

27    during the search represented the proceeds of his drug trafficking.  *Id.* ¶ 2.  Pursuant to the Plea

28

GOV. SENTENCING MEMO FOR PEDRO MARTINEZ MONTES
3:23-CR-00314-CRB

1  Agreement, the defendant acknowledges that a conviction in this case "makes it practically inevitable

2  and a virtual certainty that [he] will be removed or deported from the United States." *Id.* ¶ 1.

   2.  ***Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant***

5  The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and

6  much of the South of Market neighborhood, is in crisis.  As the Court is well aware, the proliferation of

7  highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and

8  methamphetamine has exacted a crushing human toll in the Tenderloin.  The Tenderloin open-air drug

9  market not only creates suffering for its participants (including staggering amounts of overdoses and

10  fatalities) but also dire externalities for the people and families that live and work in the Tenderloin, as

11  well as for San Francisco itself.  The effects of the defendant's offense, considered as an individual act,

12  are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

13  Unsurprisingly, given the relevant conduct and amount of controlled substances the defendant

14  possessed, the adjusted Guidelines range for the defendant's conduct is 37 to 46 months.  The defendant

15  has limited prior criminal history.  The proposed sentence—of time served plus one day and a three-year

16  term of supervised release with a highly-restrictive geographic restriction—is a downward variance from

17  the Guidelines range but one that the government submits is appropriate given the defendant's conduct

18  and criminal history, the unique problem the Tenderloin faces, and the need for deterrence and

19  protection of the public.

20  In order for the defendant to receive this plea offer, the defendant waived detention and has been

21  in continuous custody since arrest; the government offered the defendant a time-served plus one day

22  sentence in exchange for the defendant's agreement to promptly plead guilty and proceed to sentencing

23  (including waiving indictment) within weeks of arrest; the defendant also agreed to be subject to a three-

24  year term of supervised release that includes a strict stay-away condition from the Tenderloin.  The

25  defendant is on notice that a return to the Tenderloin (in violation of the defendant's supervised release

26  terms) will invite new charges or supervised release violations.

27  This disposition results in a drug trafficking conviction within weeks of arrest (not months or

28

5

years), immediate separation of the defendant from the Tenderloin, and prevention of the defendant from returning to the Tenderloin.  The speed at which this case moved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin.

**B.**     **The necessity of the proposed supervised release special conditions**

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this disposition.  In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to effect a strict stay-away from the Tenderloin for three years.  Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

Combined with a suspicionless search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained.  The stay-away condition is also necessary given the particular circumstances of Tenderloin drug trafficking, where the Court has repeatedly encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin.  *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

On the facts of this particular case, under the § 3553(a) factors and given the provisions of the Plea Agreement, the government respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of § 3553(a).

GOV. SENTENCING MEMO FOR PEDRO MARTINEZ MONTES
3:23-CR-00314-CRB

1

## V.   CONCLUSION

2      For these reasons, the government recommends that the Court sentence the defendant to a

3 sentence of time served plus one day, to be followed by a term of supervised release of three years and

4 the special conditions agreed to by the parties in the Plea Agreement, including the stay-away condition.

5

6 DATED: September 27, 2023                    Respectfully Submitted,

7

8                                             ISMAIL J. RAMSEY
                                             United States Attorney
9

10                                             _/s/ Dan Karmel_____

11                                             DAN M. KARMEL
                                             Assistant United States Attorney

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOV. SENTENCING MEMO FOR PEDRO MARTINEZ MONTES
3:23-CR-00314-CRB

## ADDENDUM – CONVERTED DRUG WEIGHT TABLE[3]

| Substance | Amount Possessed by Defendant | Conversion | Converted Drug Weight |
|---|---|---|---|
| Cocaine | 53.0 | 1 gram = 200 grams | 10.6 KG |
| Cocaine Base | 63.1 | 1 gram = 200 grams[4] | 12.62 KG |
| Heroin | 61.0 | 1 gram = 1 kilogram | 61 KG |
| Methamphetamine | 77.6 | 1 gram = 2 kilograms | 155.2 KG |
| **Total** | - | - | **239.42 kilograms** |
| | | | |

---

[3] *See* §2D1.1, Application Note 8(D).

[4] Pursuant to the Attorney General's December 16, 2022, memorandum, *Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases*, the government recommends that the converted drug weight for the cocaine base be determined by reference to the conversion rate for powder cocaine.

GOV. SENTENCING MEMO FOR PEDRO MARTINEZ MONTES
3:23-CR-00314-CRB